REBECCA BALDINGER v. CAMDEN FIRE INSURANCE ASSOCIATION and Others.[1]

April 18, 1913.

Nos. 17,911—(28).

**Action to vacate award — fraud — evidence.**

In an action to vacate an award of referees under a Minnesota standard fire policy, and to recover the amount of the actual loss sustained, it is *held:*

(1) That the award of the referees cannot be vacated for mere inadequacy, but that the inadequacy may be so gross as to justify a jury in finding fraud, invalidating it.

(2) The jury were justified in finding that the award was so grossly inadequate, under the circumstances of the case, as to prove fraud, invalidating it.

(3) The plaintiff, who owned the property, and her husband, who had used it and like property in a practical way for many years, and had some experience in construction, were qualified to testify as to value.

(4) The award of the jury is not excessive.

(5) It is not error to refuse a requested instruction, though correct and applicable, if the point of the requested instruction is fairly and accurately stated in the general charge.

[1] Reported in 141 N. W. 104.

Action in the district court for Ramsey county against three insurance companies to set aside an award of $470.83, rendered by three arbitrators appointed under the terms of the policies, and to recover judgment against defendants for $1,855. Among other matters the complaint alleged that plaintiff repudiated and refused to abide by the award, and shortly after its rendition demanded resubmission to arbitrators, according to the terms of the several policies, and duly submitted to defendants the names of three disinterested men, with the request that defendants choose from the names so submitted one man to act as arbitrator, but that defendants neglected to comply with the request. It alleged numerous reasons why the purported award was void, one reason being that at least two of the arbitrators, naming them, were not disinterested, but were biased against the insured and in favor of defendants, and that their bias influenced their action upon such arbitration. The separate answers alleged that plaintiff, with full knowledge that a certain person was one of the three proposed by defendants from whom to select a referee and had been selected by the other two referees as a third referee, appeared before the three and produced testimony and submitted the amount of loss to them, thereby consenting and agreeing to the selection of the person named, and was estopped to object to the award.

The case was tried before Olin B. Lewis, J., and a jury which returned a verdict for $950, apportioned among the three defendants. From an order denying the joint and several motion of defendants for a new trial, they appealed. Affirmed.

*Durment, Moore & Sanborn,* for appellants.

*T. R. Kane* and *Emil W. Helmes,* for respondent.

DIBELL, C.

This action is brought to vacate an award of referees chosen pursuant to the provisions of the Minnesota standard fire insurance policy, and to recover the amount of the actual loss, claimed to be $1,855. The issues, both as to the validity of the award and as to the amount of the loss, were submitted to a jury, which found a verdict for the plaintiff for $950. The award was $470.83. The

defendants jointly and severally appeal from an order denying their joint and several motion for a new trial.

1. The provision of the Minnesota standard policy as to the effect of an award is as follows: "The award in writing by a majority of the referees shall be conclusive and final upon the parties as to the amount of loss or damage." It is settled law that an award is not invalidated because of mere inadequacy. To invalidate the award, the inadequacy must be so gross as to justify a legitimate inference and finding of fraud. An illustrative case is Perry v. Insurance Co., 137 N. C. 402, 49 S. E. 889, where the value as found by the jury upon competent testimony was $750 and the award was a trifle less than $75. No exact rule can be stated whereby to determine the amount of inadequacy which will justify a finding of fraud. To some extent each case must stand by itself; the evidence of inadequacy being viewed in connection with attendant circumstances. There is no fixed ratio between the award and the actual loss which will determine for all cases that the inadequacy is or is not so gross as to constitute fraud. The difference must be so great that it appears from such difference alone, or from such difference and circumstances attending, that the award is not the result of an honest and fair judgment, and that it is so grossly inadequate that it operates as a fraud upon the insured.

2. The property insured consisted of a two-story and basement frame building. In the basement were two large bake ovens. The evidence is that the ovens had been built about 9 years before, and with ordinary use would last for as many as 40 years. They are of unusual construction, and require expert knowledge and skill in their making. They are not mere furnaces. The only witness testifying as to value for the defendants put the total damage to the insured property at $260 or $265, of which $20 was apportioned to the ovens, and $240 or $245 to other parts of the building. A witness for the plaintiff, and the only one who testified as to the damage to the building exclusive of the ovens, put the damage at $375. A properly qualified witness for the plaintiff put the reasonable value of repairing the ovens at $1,600. It is quite clear, from a careful examination of the evidence, that the damage done to the

building, as distinguished from the ovens, was from one-half to three-fourths of the total award. It is practically demonstrated, or at least the jury might think so, that, assuming the total loss to be $900, which is substantially the amount of the verdict, less the interest included in it, the portion of the award which represented the damage done to the ovens was not more than a third or a fourth of the value as found by the jury.

If this were a case of a loss of $200,000 and an award of $100,000, the discrepancy would be startling. If it were a case of an award of $100,000, and the loss was three or four times as great, the difference would be more startling, but still a difference only in degree. In the case at bar we are dealing with small figures. In dollars the difference is not great, but the award is but a fraction of the loss, a ratio something like that suggested in the larger figures just used for illustration. The jury might well enough find that the referees had no proper appreciation of the kind of property with which they were dealing, or of the damage done it, and that their award was so grossly inadequate as to constitute fraud.

We are not to be understood as saying that awards are lightly to be set aside because of inadequacy. The contrary is true. They will be supported unless the evidence is convincing. There is no right of appeal from the referees to a jury. An attentive consideration of the evidence leads us to the conclusion that the finding of fraud is well supported. The case was put to the jury by the trial court in a thoroughly satisfactory manner, and the verdict should not be disturbed.

3. The plaintiff and her husband testified as to the value of the property. The defendants claim that they were not sufficiently qualified. The plaintiff was the owner of the property. She and her husband had lived in the house and operated the ovens, in a practical way, for many years. The husband had contracted for the building of the ovens 9 years before, had some other experience in the building of ovens, and had spent his life in using them. We entertain no doubt of their competency to testify. Perhaps their testimony was not of much weight. It was competent.

4. The defendants claim that the verdict is excessive. We do not

think so.   The measure of damages and the method of proper proof were simple.   The testimony of the plaintiff and her husband, who put the damage up to $2,800 or more, may be put aside.   The only witness for the defendants put the damage at $260 or $265, an amount ridiculously small.   One witness put the damage to the building, aside from the ovens, at $375.   Another put the cost of repairing the ovens at $1,600.   The jury might well enough have found the full amount claimed.

5.  The policy of the Union Insurance Company was for $1,200. The policy of the Insurance Company of the State of Pennsylvania was for $2,000.   In each policy concurrent insurance was allowed and the insurable value was put at $3,200.     Later the Camden Company issued a policy of $1,000.   It is conceded that the issuance of the Camden policy avoided the two prior policies, unless the two insuring companies assented to the new policy.    One Samuel Baldinger, a son of the plaintiff, claimed that he told one Brandl, the authorized agent of the two companies, that he was about to take out the Camden Company policy, and that Brandl consented.   The two defendants requested this instruction:   "It is not enough that the witness Samuel Baldinger told Brandl he was going to take out the insurance, but the witness Brandl must have consented that he should do so."   This instruction was refused, and the two defendants claim error.

The instruction was correctly framed, and pointedly referred to a live issue in the case, and very properly might have been given. The precise thought embodied in it is given in the court's general charge, and is repeated, in one form or another, two or three times. The rule is so throughly settled that it is not error to refuse a requested instruction, though it is correct and applicable, if the point of it is fully and accurately stated in the general charge, that no citation of authority should be made.

Order affirmed.