## R. L. HARRINGTON v. AGRICULTURAL INSURANCE COMPANY OF WATERTOWN, NEW YORK, AND OTHERS.[1]

March 13, 1931.

No. 28,289.

*Nathan H. Chase,* for appellant.
*Harry A. Hageman,* for respondent.

HOLT, J.

The appeal is from an order denying a motion in the alternative for judgment notwithstanding the verdict or a new trial.

[1]Reported in 235 N. W. 535.

Plaintiff held a ten-year lease of a store building on Sixth street near Hennepin avenue in Minneapolis, when, on September 7, 1927, a fire occurred two years prior to the expiration of the lease. At the time of the fire he was insured in four insurance companies "against loss or damage by fire to the amount of" $12,000 "on improvements and betterments made by" him, more particularly designated as partitions, fixtures, heating plant, piping, wall, ceiling, floor and exterior painting, store front, plate glass, etc. Coinsurance was permissible. The policy here involved is for $2,000. An appraisal was had and plaintiff's loss was fixed by the arbitrators at $11,304.52. The insurance companies refused to pay the award, and this action was brought against them, resulting in a verdict of $12,346.22. Only defendant the Agricultural Insurance Company of Watertown appeals, but the parties have agreed that this decision will bind all.

The law of this case was settled on the former appeal. Harrington v. Agricultural Ins. Co. 179 Minn. 510, 229 N. W. 792, fully annotated in 68 A. L. R. 1340. The question now presented is whether or not the law as there determined was properly applied in the subsequent trial. The assignments of error are many, but it will not be necessary to discuss all.

It was established by the former appeal that plaintiff's loss was to be measured so far as possible by the value of the right to use the insured property for the remainder of his lease, for at its termination his interests therein ceased. If before the end of the term the improvement and betterments made by him were damaged or destroyed by fire he was under no obligation to restore them. Obviously the situation presents practical difficulties as to the nature of the evidence admissible to prove plaintiff's loss. While of course neither the original cost of the property insured nor its value at the time of the fire can measure the loss arising from a deprivation thereof for the remaining two years of the lease, still the same are factors to be considered in fixing the loss. Had the destruction been total, the loss could in no event be placed as high as the value of the property at the time of the fire, for by the former

decision the loss is limited to the rental value of the use of the property for only two years. It could not be removed. It is clear that had the fire occurred on the last day of the term, the loss to plaintiff would have been but nominal though the value of the property might have been almost as much as when this fire happened.

However the value of the use of property has some relation to its intrinsic value. We think evidence of location as affecting rental value was also properly received. The property was insured as in a definite location there to be used, and nowhere else. Appellant raises the objection to evidence of the profitable arrangement in existence with sublessees at the time of the fire. That was the situation when the insurance was effected. Had the property not been destroyed, it is fair to presume that the benefits of the arrangement would have continued to plaintiff. We consider the rule stated in Niblo v. North American F. Ins. Co. 1 Sanford, 551, too restricted when applied to the facts herein. What had been accomplished by way of income from the use of the property, while not conclusive, seems proper evidence of the value of the use. From this income was deducted the rent paid the lessor, and this rent reflected the betterments made by the landlord.

There was some testimony received as to the average monthly sales of plaintiff during the eight years the lease had run. Error is assigned upon the reception of this evidence. It might well have been excluded. But we do not think the matter of such importance that a reversal on that ground alone should follow; for the expert who was testifying as to rental value based it in part upon a certain percentage of the average monthly business of a merchant in such a locality, and testified that this was a usual method employed by rental agents in fixing rents. We think, so far as the reception and exclusion of evidence went, there were no erroneous rulings which would justify a new trial.

The peculiar ownership of the property insured gave rise to great difficulty in ascertaining the loss sustained. Both landlord and tenant had an insurable interest therein, but they did not see fit to obtain a joint insurance, nor did defendant hesitate to issue its

policy protecting plaintiff alone. The lease stipulated that at the end of the term all betterments and improvements became the property of the landlord, and likewise they so became if the premises were rendered untenantable by fire or any other cause. Here the parties to this insurance contract, cognizant of the lease and, we assume, of its terms, deemed it proper to place insurance on the tenant's interest in the property in the sum of $12,000 when less than three years of the lease remained. This is a fact to consider in determining the indemnity of the coverage. While the insurance is not upon a continuance of a leasehold, it partakes of some of its features; and evidence affecting the proper measure of indemnity may come from many angles.

The exception taken to part of the charge when it was given is not now assigned as error; but two other parts thereof are. These latter were not excepted to at the trial, and no error was assigned thereon in the motion for a new trial. It is perhaps true that the parts last referred to are somewhat confusing, but even so, in view of the belated attack, this would not justify us in granting a new trial.

The verdict is also attacked as contrary to the evidence and contrary to law. A witness of wide experience in contract work and in the restoration of property of this sort after fires testified that the cost or value of restoration of the improvements and betterments placed on the premises by plaintiff to the condition they were in before the fire would be $4,840.02, and that it would take from six weeks to two months to do the work. But, as we read the record, he admitted on cross-examination that the depreciated value of the betterments and improvements immediately before the fire was $11,304. It may be urged that under the terms of the lease the fire completely destroyed or wiped out the lessee's property by ending the term, and therefore it would not be improper to limit the value of the use of the remainder of the term to the value of the betterments and improvements as of the time of the fire. However under our law the whole theory or sole purpose of fire insurance contracts is indemnity to the insured for the loss caused by a fire

to the property covered. If the fire damages or only partly destroys the property, the cost of restoration or repairing measures the indemnity payable. And under the terms of this policy the insurer reserved the option to replace or restore the property consumed by the fire instead of paying the indemnity. There was no testimony offered disputing in any manner that introduced by defendant that complete restoration of the damage occasioned to plaintiff's betterments and improvements by the fire could be made for $4,840.02. The insurance is not upon the leasehold, but upon plaintiff's property mentioned; and we are of the opinion that though the recovery is measured by the rental value of the use of the property for the remainder of the lease, such recovery cannot exceed the cost of the restoration of the property to the condition it was in before the fire occurred.

The evidence does not support the verdict in the amount herein returned of $12,346.22, which includes interest from December 1, 1927. Our conclusion is therefore that there must be a new trial.

Order reversed.

.STONE, J.

I concur in the result.